## Sarah Beck, Executrix, v. First Fraternal Building and Loan Association, Appellant.

Argued September 29, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Harry Shapiro,* for appellant.

*Frederick J. Shoyer,* and with him *Kendall H. Shoyer,* for appellee.

OPINION BY CUNNINGHAM, J., December 11, 1931:

The action below was assumpsit upon a promissory note dated February 1, 1926, for $2,000, given by the First Fraternal Building and Loan Association to Louis Beck and payable to his order two months after date; it was signed "First Fraternal Bldg. & Loan Assn., Barnett Karp, president, Samuel Altman, treasurer," and had the association's seal attached. Louis Beck having died before trial, his executrix, Sarah Beck, was substituted as plaintiff. It was admitted the original plaintiff had received $500 as a partial payment on the note; a verdict was rendered against defendant for $1,500 with interest. After denying defendant's motions for judgment n. o. v. and a new trial, the court below entered judgment on the verdict and defendant has appealed.

Of the fourteen assignments of error twelve relate to the manner in which the trial judge disposed of the points submitted on behalf of appellant (including one for binding instructions), and the others to the denial of its motion for judgment n. o. v.

There was competent, and practically undisputed, evidence from which the jury could find these facts: The office of the association was at No. 333 S. 5th Street, Philadelphia; its president at the time the note was given was Barnett Karp, the proprietor of a restaurant about half a block from the association's office; Samuel Altman, also a restaurant proprietor at 810 Locust Street, was treasurer; its secretary was Jacob B. Bichovsky and his father, Barnett Bichovsky, was its conveyancer. The conveyancer and secretary were engaged in the real estate business at No. 333 S. 5th Street under the name of "B. Bichovsky and Son" and the defendant association, along with several

others, held its meetings in their office. Several months prior to the date of the note the president, treasurer and secretary of appellant opened negotiations with Charles S. Bernard, a cousin of Louis Beck, looking toward the borrowing of money for the use of the association, which resulted in Bernard's lending it $1,000 of his own money (repaid to him) and arranging with Louis Beck to lend it $2,000 out of his savings deposited in the Sixth National Bank.

On the day of the transactions here involved Bernard came to the office of appellant and there met its secretary, Jacob B. Bichovsky, who showed him a certified copy of a minute adopted January 28, 1926, resolving that the association "borrow the sum of two thousand dollars from Louis Beck and that the president and treasurer be ...... authorized and empowered to sign all necessary notes to secure the payment of same," and also produced the note in suit, then unsigned. The secretary informed Bernard that he and Bernard would have to go to the restaurants of Altman, the treasurer, and Karp, the president, to procure their signatures to the note. They took it first to Altman who signed as treasurer and asked Bernard whether he had given "them the money;" Bernard replied, "Not yet, but I will as soon as I get the note signed up." From Altman's restaurant they went to Karp's place of business; he signed as president and inquired of Bernard, "When is the money coming?" Bernard stated he would furnish the money as soon as the note was "signed up." Upon their return to the office of the association they were met by Morris Beck, a son of Louis Beck, with a check for $2,000, signed by the cashier of the Sixth National Bank and payable to the order of Sarah Beck, the wife of Louis, and endorsed by her and her husband in blank. In the office at that time were Jacob B. Bichovsky, the secretary, and his father, Barnett Bichovsky, the conveyancer,

representing the appellant. Bernard tendered the check to the secretary but the conveyancer took it from Bernard's hand and, after examining it, handed it to the secretary. The note and copy of the resolution, certified by the secretary, were then delivered to Morris Beck for his father. Barnett Bichovsky testified the money "was borrowed for the use of the association" but was embezzled by him and no part of it received by, or used for the benefit of, the association. The cashier's check, after its delivery to the secretary, was further endorsed, "For deposit only to the order of B. Bichovsky and Son." This witness also stated that the payment on account of $500 was made by him from his own funds. The conveyancer was the only witness called by appellant. The by-laws of appellant provide that "the treasurer shall receive and take charge of all moneys paid into the association and give receipts therefor" and confer no express authority upon the secretary to receive moneys for it. The highly technical defense interposed was that as the evidence showed the cashier's check for $2,000 was handed by Beck's representative to the secretary in the physical absence of the treasurer there could be no recovery on the note of the association given in exchange for the check. Bernard and the Becks were stockholders and in possession of pass-books containing the by-laws. There was testimony by Bernard that he had made payments at the office of the association upon five or six occasions during the six months preceding the date of the note and that Jacob B. Bichovsky, the secretary, frequently received the money; that even when Altman, the treasurer, was present the witness was instructed to "give it to Jake;" and that occasionally payments were received by the conveyancer.

The trial judge instructed the jury that the by-laws provided the treasurer should receive and take charge of all moneys of the association and that neither the

secretary nor the conveyancer had authority thereunder to receive moneys for it, but submitted the question whether, under all the evidence, the treasurer, in this instance, authorized the secretary to accept the check and deliver the note. The attention of the jury was directed to the evidence indicating that the treasurer had not at all times received moneys coming into the association. True, this evidence was not nearly as strong as in Louchheim v. Somerset B. and L. Assn., 211 Pa. 499; Mohrfeld v. Building Association, 194 Pa. 488, and Barlette v. Red Star B. and L. Assn., 64 Pa. Superior Ct. 321, but it was for the consideration of the jury, particularly in the light of the other evidence in this case. Reference was also made to the contention of appellant that the Becks had been negligent in endorsing the cashier's check in blank rather than to the order of appellant and had thereby made it easier for the conveyancer to embezzle the proceeds. Upon the conclusion of his charge the trial judge asked whether there was anything further counsel would like to have him say to the jury. Counsel for appellant then requested specific answers to the points submitted by him, to which the trial judge replied he had covered them sufficiently in the general charge and repeated his instructions that the by-laws provide for payment to the treasurer alone and that stockholders were presumed to be familiar with their provisions. Upon examination of the points and charge, we are satisfied the principles of law referred to in those which might have been formally affirmed were sufficiently stated in the general charge. The first requested binding instructions for the association and was properly refused; the second, without making any reference to the evidence or the issues thereunder, requested the court to charge the abstract proposition of law that "where a corporation, by its by-laws, designates an officer as the one to receive moneys due it, a pay-

ment to another officer is not a payment to the corporation if it does not actually receive the money;" in view of its form and the issue raised by the evidence it was not error to refuse it. The third, fourth and fifth points related solely to provisions of the by-laws defining the duties of the respective officers of the association and the subject matter of these points was fully covered in the general charge. The sixth read: "Where one of two innocent persons must suffer, he who has done an act which has contributed to the loss is the one that must suffer;" it was not stated in the point that the principle invoked would be applicable against the Becks only if the jury found from the evidence that they had "contributed to the loss." By the seventh the court was asked to declare, as a matter of law, that the Becks had been negligent in endorsing the check in blank instead of to the order of the association; that was a question for the jury. The eighth improperly assumed the negligence of the Becks in this particular and the ninth and tenth were fully covered in the charge.

It is apparent that the provision of the by-laws designating the treasurer as the proper officer to "receive and take charge of all moneys paid into the association, and give receipts therefor," was intended primarily to apply to payments of dues and fines by stockholders and to payments by borrowers; there is nothing in them specifically prohibiting the treasurer from designating, in a transaction such as is here involved, another officer as the person to perform the purely mechanical duty of receiving money which the association by resolution has decided to borrow and of delivering to the creditor named in the resolution the evidence of the association's indebtedness to him. There was evidence in this case clearly indicating that, when Bernard and the secretary brought the note to them for their signatures, the president and treasurer

(expressly empowered under the resolution to borrow $2,000 from Beck and sign the note of the association securing its repayment) authorized the secretary, by their words and conduct, to receive this money for the association and to deliver the note and a certified copy of the resolution to Beck's representative. From any point of view there was sufficient evidence to go to the jury on this question. The jury was justified in concluding that the loss was due to the misplaced confidence of the president and treasurer in the Bichovskys; as they were the agents of the association it must bear the consequences and cannot cast them upon the other innocent party. In Campbell v. Latona B. and L. Assn., 92 Pa. Superior Ct. 436, cited by appellant, neither the president, treasurer, nor board of directors were shown to have had any knowledge or notice that the secretary and conveyancer had asked the plaintiff in that case to lend money to the association.

We find no reversible error in this record and the assignments are severally overruled.

Judgment affirmed.